**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| TERRY MALICOAT, | Case No. 1:17-cv-811 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Terry Malicoat filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that this case should be AFFIRMED because the finding of non-disability is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On January 9, 2014, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of January 1, 2010. (Tr. 150-151). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On December 16, 2016, ALJ Christopher Tindale held an hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. On February 23, 2017, the ALJ denied Plaintiff's application in a written decision. (Tr. 25-36). Plaintiff now seeks judicial review of the denial of his application for benefits.

1

Plaintiff was born in 1965 and was 48 years old at the time of his date last insured. He graduated from high school and has past relevant work as a pharmacy technician. He alleges disability based primarily on his mental impairments.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder, depressive disorder, obesity and diabetes mellitus. (Tr. 27). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform medium work with the following limitations:

> He is limited to simple, routine tasks consistent with unskilled work in a work environment free of fast production rate of pace work. He can have no contact with the public, occasional contact with supervisors, and only occasional and superficial contact with co-workers. Superficial contact is defined as no tandem tasks. He must work in a low stress environment defined as having only occasional changes in the work setting and only occasional decision making required.

(Tr. 30). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff is unable to perform his past relevant work. Nonetheless, there are jobs that exist in significant numbers in the national economy that he can perform, including such jobs as linen room attendant, stacker and equipment cleaner. Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff

argues that the ALJ erred by: 1) finding that Plaintiff could sustain a forty-hour work week; 2) failing to properly assess Plaintiff's mental RFC; 3) failing to find that Plaintiff met Listing 12.06; 4) improperly assessing his credibility, pain and subjective complaints; and 5) committing various vocational errors.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial

evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered impairment, or combination of impairments, expected to last at least twelve

months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### B. Specific Errors

At the outset the undersigned notes that an individual must be fully insured at the time of disability to qualify for DIB, and the date last insured is the last day when an individual is eligible for DIB. 42 U.S.C. §§ 423(a)(1)(A),(c)(1)(B); 20 C.F.R. §§ 404.101(a), .131(a). The Act and the regulations require Plaintiff to prove disability prior to his date last insured. *Id.* Plaintiff's date last insured for DIB was December 31, 2013 (Tr. 27). As such, the relevant period is January 1, 2010, Plaintiff's alleged onset date, through December 31, 2013, the date last insured.

1. *Evaluation of Plaintiff's mental impairments.*

Plaintiff's second and third assignments of error relate to the ALJ's evaluation of his mental impairments.[1] First, Plaintiff contends that the ALJ failed to consider that Plaintiff's mental impairments would prevent him from sustaining a 40-hour work week. Next, Plaintiff contends that the ALJ's mental RFC finding did not comply with Agency regulations. Last, Plaintiff contends that the ALJ erred in failing to find that Plaintiff's impairments met or equaled Listing 12.06. Plaintiff's contentions are unavailing.

With respect to Listing 12.06, Plaintiff asserts that the ALJ failed to detail how the listing was or was not met. Listing 12.06 states, in pertinent part, that:

> The required level of severity for these disorders are met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.
>
> A. Medically documented findings of at least one of the following:

---
[1] Plaintiff's first assignment of error relates to the ALJ's step-five finding and will be considered together with Plaintiff's final assignment of error for alleged vocational errors.

5

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms: a. Motor tension; or b. Autonomic hyperactivity; or c. Apprehensive expectation; or d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.06.

Thus, to satisfy listing 12.06, Plaintiff must satisfy the requirements of paragraphs A and B or of paragraphs A and C. On appeal, Plaintiff argues primarily that the ALJ erred in finding that Plaintiff did not satisfy the requirements of paragraph C. In this regard, Plaintiff asserts that his history of agoraphobia and anxiety meet these requirements. Plaintiff's contention lacks merit.

6

Here, the ALJ's decision indicates that he considered whether Plaintiff's impairments met or equaled the requirements for Listing 12.04 and 12.06.

The ALJ discussed each of the "B criteria," determining that Plaintiff had moderate[2] limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself. (Tr. 29). With respect to the paragraph C criteria, the ALJ found that "there is no evidence of chronic mental disorder of at least two years; duration with evidence of both medical treatment, mental health therapy, psychosocial support(s), or highly structured setting(s) that is ongoing and diminishes the symptoms and signs of the claimant's mental disorder as well as evidence of marginal adjustment, that is, minimal capacity to adapt to changes in environment. . ." (Tr. 30).

Here, other than asserting that he suffers from anxiety and agoraphobia, Plaintiff fails to provide any evidence that his impairments met the requirements of Listing 12.04 and/or 12.06. It is well established that a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment). As such, Plaintiff fails to develop this argument in any meaningful way. It is not the Court's function to comb through the entire record to develop an argument on Plaintiff's behalf or to take the portions of the record cited by Plaintiff's counsel and attempt to craft an argument that supports the general issues he referenced

---

[2] Although the ALJ states at the end of the same paragraph that Plaintiff "has no more than mild limitations in understanding, remembering and applying information." (Tr. 29).

in the most perfunctory manner. *Gray v. Astrue*, 4:09–CV–01468, 2010 WL 2106200 (N.D.Ohio Mar.31, 2010) report and recommendation adopted sub nom. *Gray v. Comm'r of Soc. Sec.*, 4:09CV1468, 2010 WL 2106196 (N.D.Ohio May 25, 2010) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."). See also *Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 490 (6th Cir.2006) ("This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal...."). For these reasons, the undersigned finds that the ALJ properly determined that Plaintiff's impairments did not meet any listing.

Next, Plaintiff claims that the ALJ failed to properly articulate the basis for his mental RFC assessment and the weight assigned to the mental health opinion evidence. In this regard, Plaintiff argues that the ALJ failed to comply with SSR 96–8p by not giving a specific "function by function" assessment of his RFC with respect to his mental impairments.

Here, in formulating Plaintiff's RFC the ALJ afforded little weight to the state agency physicians and state agency psychologists who opined that there was insufficient evidence prior to Plaintiff's date last insured to fully evaluate Plaintiff's functional abilities. (Tr. 33). The ALJ further gave some weight to the Global Assessment Functioning (GAF) scores of 60 and 65 provided by Dr. Eggerman in December 2013.[3]

---

[3] GAF scores of 51-60 are indicative of moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. GAF scores of 61-70 indicate

8

The ALJ noted that despite complaints of disabling mental limitations, Plaintiff did not seek mental health treatment until December 2013. In this regard, the ALJ noted that the December 2013 visit was motivated by Plaintiff's desire to apply for disability rather than treatment as he saw Dr. Eggerman on only one occasion. (Tr. 33-34). The record indicates that Plaintiff improved with psychotropic medication. The ALJ also noted that Dr. Seibert's office notes show that that he did not support Plaintiff's pursuant of disability.

The ALJ considered all of the evidence of record and, as the finder of fact, reasonably concluded that Plaintiff could perform medium work that involved simple, routine tasks consistent with unskilled work; no fast production rate pace work; no contact with the public, occasional contact with supervisors, and only occasional and superficial contact (defined as no tandem tasks) with co-workers (Tr. 30). Additionally, the ALJ found that Plaintiff must work in a low-stress environment defined as having only occasional changes in the work setting and only occasional decision making (Tr. 30). Plaintiff appears to argue that the ALJ's RFC assessment is not substantially supported because it is not based a specific medical opinion. Plaintiff's contention lacks merit.

Contrary to Plaintiff's argument, an ALJ is not required to base each RFC limitation on a specific medical opinion, so long as the RFC is supported by the record as a whole. *See Coldiron v. Com'r*, 391 Fed. Appx. 435, 439 (6th Cir. 2010); *Poe v. Com'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."); *accord Clemow v. Com'r*, 2018 WL

---

some mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social, occupational or school functioning.

1083494 at *8 (S.D. Ohio Feb. 28, 2018); *see also Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Here, the ALJ's RFC assessment is supported by the Plaintiff's medical records, testimony and daily activities. As noted by the ALJ, Plaintiff cared for his dogs and took them for walks, watched television and Youtube, attended his doctor appointments, and drove at times. (Tr. 29). Plaintiff started receiving medications for his mental condition from Dr. Seibert, his primary care physician, in July 2013. (Tr. 229). He claimed he had issues leaving his house (Tr. 229, 234), and requested to see a psychiatrist. (Tr. 241). At Plaintiff's request, Dr. Seibert referred him to psychiatrist Dr. Eggerman, who Plaintiff did not visit until the end of the relevant period in December 2013. (Tr. 29, 223). Plaintiff reported to Dr. Eggerman that he had not worked since 2006, when he was fired after missing a shift. (Tr. 224). He left his previous job because he did not like the pay and he left the job before that because he was not happy. (Tr. 224). Dr. Eggerman reported that Plaintiff's agoraphobic behavior emerged after quitting work and having a less structured schedule. (Tr. 223). Plaintiff had only one visit with Dr. Eggerman but, he continued to receive medications from his primary care physician Dr. Seibert. (Tr. 29). Dr. Seibert's treatment notes after the relevant period mostly concern Plaintiff's physical condition, not his mental health. (Tr. 268, 317, 327, 334, 340). Plaintiff visited another psychiatrist twice in 2016, well after the relevant period. (Tr. 353-62).

In light of the foregoing, the undersigned finds that the ALJ's RFC assessment is substantially supported and should not be disturbed.

*2. Credibility*

Plaintiff argues next that the ALJ improperly evaluated Plaintiff's credibility. Specifically, Plaintiff contends that the ALJ erred in discounting Plaintiff's subjective complaints of disabling mental impairments. Plaintiff also contends that the ALJ failed to discuss the findings of the state agency psychologists, who found Plaintiff to be partially credible. Plaintiff also asserts that that ALJ the failed to consider the effectiveness and side effects of his medications. Plaintiff's contentions are again not well-taken.

An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 387, 392 (6th Cir.2004).

The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or

11

other symptoms; and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p. Here, the ALJ's credibility analysis properly considered these factors.

As noted by the Commissioner, the state agency psychiatrists found that Plaintiff was partially credible (Tr. 77, 85), which is consistent with the ALJ's determination. (Tr. 31-32). In addition, the state agency psychiatrists noted that Plaintiff had positive reactions to medication, as the ALJ also noted. (Tr. 32, 34). Furthermore, as detailed above, despite the state agency doctors finding insufficient evidence, the ALJ found otherwise based on the additional evidence received at the hearing level, including Plaintiff's testimony related to his mental impairments. (Tr. 33, 40-71). The ALJ also properly considered the level and type of treatment Plaintiff sought and obtained in determining whether Plaintiff was disabled. Plaintiff did not require or seek frequent treatment; rather, he received little treatment during the relevant period.

Additionally, as outlined above, the ALJ properly considered that Plaintiff's condition improved with medication. (Tr. 77, 85). Dr. Eggerman noted that Plaintiff reported benzodiazepines helped him, suggesting the medications were effective. (Tr. 32, 223). The ALJ noted that Plaintiff alleged drowsiness and fatigue from Valium, he reported that he had taken it for twelve years and he stopped taking it in 2013. (Tr. 32, 205).

While Plaintiff may disagree with the ALJ, the ALJ's subjective symptom analysis was well within the zone of reasonable choices. *See Mullen v. Bowen*, 800 F.2d 535, 595 (6th Cir. 1986). The substantial evidence standard presupposes that there is a zone of choice within which the decision maker can go either way, without interference by the

courts. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). Because the ALJ made a reasoned and reasonable decision supported by substantial evidence, the ALJ's credibility assessment should be afforded its due deference and his decision should be affirmed.

*3. Vocational Errors*

Plaintiff's first and final assignment of error asserts that the ALJ committed various vocational errors. Namely, Plaintiff asserts that the ALJ's hypothetical questions to the vocational expert failed to consider Plaintiff's inability to sustain a 40-hour work week. Plaintiff further argues that the hypothetical questions failed to considered the number of days Plaintiff would be absent and the extra breaks he would need due to his anxiety. Plaintiff's assertions are unavailing.

The Sixth Circuit has held that a hypothetical question must only include a claimant's credible impairments and limitations. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir.2001) (emphasis added); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). Here, the ALJ's hypothetical question was supported by the medical record and other evidence, and Plaintiff has not shown that he had limitations greater than those reflected in the ALJ's hypothetical question and eventual RFC finding. However, as discussed above, the medical evidence did not support these alleged limitations, and there is no credible medical opinion that shows that Plaintiff had greater limitations than the ALJ found. Accordingly, the ALJ's decision is substantially supported in this regard.

**III. Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's

decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

   *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

TERRY MALICOAT,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:17-cv-811

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).