**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Terry Lee Malicoat,

    Plaintiff,

    v.                                                   Case No. 1:17cv811

Commissioner of Social Security                  Judge Michael R. Barrett

    Defendant.

## ORDER

This matter is before the Court upon the Magistrate Judge's February 8, 2019, Report and Recommendation ("R&R") recommending that the decision of the Commissioner be affirmed and this matter be closed on the docket of the Court. (Doc. 11).

When objections are received to a magistrate judge's report and recommendation on a dispositive matter, the district judge "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.; *see also* 28 U.S.C. § 636(b)(1). Notice was given to the parties under 28 U.S.C. § 636(b)(1)(c). Plaintiff filed objections to the Magistrate Judge's R&R. (Doc. 12).

The Magistrate Judge completed a comprehensive review of the record and the same will not be repeated here except to the extent necessary to address Plaintiff's

objections.

Plaintiff maintains that the Magistrate Judge's R&R was in error for the following reasons: (1) the ALJ failed to properly evaluate Plaintiff's mental residual functional capacity in several ways, including failing to consider the number of days of work Plaintiff would miss; (2) the ALJ's credibility determination was in error; and (3) the ALJ asked improper hypothetical questions to the vocational expert ("VE").

I. **ANALYSIS**

　　A.　**Mental Residual Functional Capacity**

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's mental residual functional capacity ("RFC") in several ways.

Residual functional capacity is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions. 20 C.F.R. § 404.1545(a)(3).

Plaintiff maintains that the ALJ erred in evaluating Plaintiff's RFC because the ALJ failed to consider the number of days of work Plaintiff would miss due to his anxiety and agoraphobia. However, a mere diagnosis alone is not determinative of the ultimate disability issue. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *see also Young v. Secretary of HHS*, 925 F.2d 146, 151 (6th Cir.1990) ("a claimant must do more to establish a disabling mental impairment than merely show the presence of a dysthymic disorder."). The responsibility for determining a claimant's residual functional

2

capacity rests with the ALJ, not a physician. *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1546(c) and 416.946(c)). Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir.1994).

The ALJ noted that when Plaintiff saw Dr. Eggerman in December of 2013, Dr. Eggerman noted that Plaintiff reported that benzodiazepines helped him leave his home. (Tr. 32). The ALJ found that this suggested those medications were effective. (Tr. 32). The ALJ also noted that Plaintiff told Dr. Eggerman that he had struggled to go to his son's wedding, but there was no mention of such complaints in Dr. Seibert's treatment notes from December of 2013. (Tr. 32). Finally, the ALJ noted that Plaintiff told Dr. Eggerman that since he started medication, he had been able to go to the store, which he claimed he had been unable to do for six years. (Tr. 32). Therefore, while Plaintiff had been diagnosed with agoraphobia, the ALJ found there was little objective evidence that Plaintiff was unable to leave his house.

Plaintiff also argues that the ALJ erred by relying upon Plaintiff's GAF score in evaluating Plaintiff's RFC. The ALJ's discussion regarding Plaintiff's GAF score was as follows:

> Lastly, the claimant was assigned GAF scores of 60[5] and 65[6] in December 2013. GAF is a "medical opinion" as defined in 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2), and must be considered with the rest of the relevant evidence. While GAF scores do not provide a longitudinal picture of the claimant's mental functioning, as such scores represent a clinician's judgment about the severity of an individual's symptoms or level of mental functioning at a particular moment in time, much like a snapshot. In that regard, Dr. Eggerman estimated the claimant's current GAF at 60. He also indicated the claimant's highest GAF during the previous year at 65 (Exhibit

3

> IF, page 5). These have been given some weight as they are generally consistent with the medical record and the claimant's minimal psychiatric treatment history, as detailed above.

(Tr. 34). The Court finds that the ALJ's discussion of the GAF scores in the record is in line with the applicable agency administrative message instruction, Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM–13066 (July 22, 2013) REV (Oct. 14, 2014), and other district courts which have addressed the issue. *See Myers v. Comm'r of Soc. Sec.*, No. 1:14-CV-271-HSM-SKL, 2015 WL 9906165, at *6 (E.D. Tenn. Dec. 30, 2015) (collecting cases), *report and recommendation adopted sub nom. Myers v. Colvin*, No. 1:14-CV-271, 2016 WL 297753 (E.D. Tenn. Jan. 22, 2016). Therefore, the ALJ's decision with respect to the weight he assigned Plaintiff's GAF scores is supported by substantial evidence.

Next, Plaintiff claims that the lack of treatment before 2013 is not fatal to his claim of disability. Plaintiff cites a Sixth Circuit opinion in which the court stated that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989). Here, the ALJ did not chastise Plaintiff for not seeking treatment, but instead used the lack of treatment as an indicator of the severity of his impairments:

> With regard to his mental limitations, the evidence shows the claimant stopped working well before his alleged onset date. In addition, despite his reports of disabling mental limitations, the claimant did not seek treatment until December 2013. Furthermore, it appears that visit was primarily motivated by the claimant's desire to apply for disability rather than treatment as he saw Dr. Eggerman on only one occasion. Moreover, the claimant had improvement with psychotropic medication [ ]. Likewise, Dr. Seibert's office notes show he did not support the claimant's pursuit of disability (Exhibits 2F, pages 9, 12, 20, 31 and 5F, pages 20 and 24).

(Tr. 33-34). In reviewing the record, the court must work with the medical evidence

4

before it. *Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir.1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, *Hale v. Secretary of Health and Human Services*, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990). There is no evidence in the record that Plaintiff could not afford or obtain treatment. Instead, as the ALJ noted, Plaintiff stated his medications were helpful, which would explain why he did not receive ongoing treatment from a mental heal professional during the relevant period. (Tr. 31)

Finally, Plaintiff states that the ALJ cannot formulate the RFC without a medical opinion and cites statements by the state agency consultants that there was "insufficient evidence" to address the duration and severity of the psychological allegations. (See Tr. 75, 83, 84).[1] It is not the ALJ's burden to seek out medical opinions to prove or disprove a disability claim. *Brown v. Comm'r of Soc. Sec.*, 602 Fed.Appx. 328, 331 (6th Cir. 2015). Rather, it is Plaintiff's obligation to provide evidence to support his claim of disability. 20 C.F.R §§ 404.1512(c), 416.912(c). Even though the ALJ's decision might invite further scrutiny due to its limited reliance on doctors' opinions, that does not mean that an ALJ's

---

[1]The ALJ addressed the opinions of the state agency consultants as follows:

As for the opinion evidence, Drs. McKee and Manos, state agency physicians, and Drs. Hoyle and Johnston, state agency psychologists, opined there was insufficient evidence prior to the claimant's date last insured to fully evaluate the claimant' s functional abilities (Exhibit IA, pages 4 and 5 and 3A, pages 4-6). These opinions have been given little weight, as additional evidence received at the hearing level supports the above residual functional capacity.

(Tr. 33).

5

decision cannot be upheld if he rejects all underlying medical opinions. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). Here, the ALJ cited to the objective record, including the opinions of Dr. Eggerman, who Plaintiff only saw once, and Dr. Seibert, who did not support Plaintiff's pursuit of disability. The ALJ found impairments consistent with the opinions of these two doctors, and considered their opinions along with other evidence in the record. The ALJ does not improperly "assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing *Ford v. Comm'r of Soc. Sec.*, 114 Fed.Appx. 194, 197 (6th Cir. 2004)).

Therefore, the Magistrate Judge did not err in concluding that the ALJ's RFC determination was proper.

**B.    Credibility**

Plaintiff argues that the ALJ's credibility analysis is nor supported by the record.

When a credibility determination regarding a claimant's subjective complaint is at issue, this Court must affirm if the ALJ's determination is "reasonable and supported by substantial evidence." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence:

> the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the record should be scrutinized. Consistency

6

between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.

*Id.* at 247-48. Here, the ALJ noted that the evidence shows the claimant stopped working well before his alleged onset date. (Tr. 33). The ALJ also noted:

> While Dr. Eggerman described the claimant as somewhat anxious, tense, guarded, defensive, and depressed, he further reported that the claimant smiled periodically and was not irritable or tearful. Dr. Eggerman also indicated the claimant's speech, thought process, and attention were within normal limits. He diagnosed agoraphobia without mention of panic attacks, social phobia, and depressive disorder, not elsewhere classified. Dr. Eggerman did not prescribe medication but did refer the claimant to counseling; however, the claimant testified he saw the counselor only once and the record does not contain her treatment notes. Likewise, the claimant did not follow up with Dr. Eggerman as instructed. Furthermore, Dr. Seibert reported in May 2015 that the claimant had not followed up with a psychiatrist as promised in January 2015. Indeed, the claimant did not seek additional treatment from a mental health profession until September 2016, well after his date last insured (Exhibit IF, pages 4 and 5 and 6F, page 7).

(Tr. 32-33). The Court notes that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Therefore, the Magistrate Judge did not err in concluding that the ALJ's credibility determination was proper.

### C. <u>Hypothetical questions to the vocational expert</u>

A proper hypothetical question should accurately describe the claimant "in all significant, relevant respects; for a response to a hypothetical question to constitute substantial evidence, each element of the hypothetical must accurately describe the claimant." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994). "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of HHS*, 39 F.3d 115, 118 (6th Cir.1994); *see also Gant v. Comm'r of Soc. Sec.*,

7

372 Fed.Appx. 582, 585 (6th Cir. 2010) ("[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible.").

Plaintiff argues that in the hypothetical to the VE, the ALJ should have asked about the number of days Plaintiff would need to miss due to his agoraphobia. However, as explained above, there is no evidence in the record to support Plaintiff's claim that he could not leave his house on a regular basis. Therefore, the Magistrate Judge did not err in concluding that the ALJ's hypothetical questions to the vocational expert were proper.

## II.  CONCLUSION

Based on the foregoing, the Court hereby **ADOPTS** the Magistrate Judge's February 19, 2019 R&R. (Doc. 12). Accordingly, the decision of the Commissioner is **AFFIRMED**. This matter shall be **CLOSED and TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                                     */s/ Michael R. Barrett*
                                                   Michael R. Barrett, Judge
                                                   United States District Court